# NO. 12-22-00304-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JASON WAYNE FRIZZELL,*<br>*APPELLANT* | § | *APPEAL FROM THE 349TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *HOUSTON COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Jason Wayne Frizzell appeals his conviction for aggravated assault with a deadly weapon. He raises two issues on appeal. We affirm.

## BACKGROUND

Appellant was indicted for aggravated assault with a deadly weapon in trial court cause number 20CR-144.[1] After a mistrial, the State reindicted Appellant for the same offense, clarifying the wording of the manner and means of committing the offense in trial court cause number 22CR-098. Appellant filed a motion to dismiss the indictment, alleging that the statute of limitations had run on the indictment in cause number 22CR-098. At the ensuing hearing, the trial court denied Appellant's motion to dismiss cause number 22CR-098 and dismissed cause number 20CR-144.

Appellant pleaded "not guilty," and cause number 22CR-098 proceeded to a jury trial. The jury found Appellant "guilty" of the offense. The indictment also included two punishment

---

[1] *See* TEX. PENAL CODE ANN. § 22.02(a)(2) (West Supp. 2022).

enhancement allegations to which Appellant pleaded "true."[2]  After a hearing, the jury assessed Appellant's punishment at seventy-five years of imprisonment.  This appeal followed.

## LIMITATIONS

In his first issue, Appellant contends that the trial erred in denying his motion to dismiss based on the action being barred by the statute of limitations.

### Standard of Review

The Texas Code of Criminal Procedure permits a defendant to object to an indictment, and have it dismissed, if the indictment indicates on its face that a prosecution thereunder is barred by the applicable statute of limitations.  *Tita v. State*, 267 S.W.3d 33, 37 (Tex. Crim. App. 2008); TEX. CODE CRIM. PROC. ANN. arts. 27.08(2) (West 2006), 21.02(6) (West 2009).  Whether a defendant is entitled to dismissal under Article 27.08(2) is a question of law subject to de novo review.  *State v. Yount*, 853 S.W.2d 6, 15 (Tex. Crim. App. 1993); *see also Smith v. State*, 309 S.W.3d 10, 13–14 (Tex. Crim. App. 2010).

### Applicable Law

The applicable statute of limitations for the indicted offense, aggravated assault with a deadly weapon, is two years.  *See* TEX. CODE CRIM. PROC. ANN. arts. 12.02(a) (West 2005), 12.03(d) (West 2005); *see also State v. Schunior*, 506 S.W.3d 29, 37–38 (Tex. Crim. App. 2016).

Texas Code of Criminal Procedure Article 12.05(b) provides that "[t]he time during the pendency of an indictment . . . shall not be computed in the period of limitation."  TEX. CODE CRIM. PROC. ANN. art. 12.05(b) (West 2005).  "[A] prior indictment tolls the statute of limitations under Article 12.05(b) for a subsequent indictment when both indictments allege the same conduct, same act, or same transaction."  *Hernandez v. State*, 127 S.W.3d 768, 774 (Tex. Crim. App. 2004); *see Ahmad v. State*, 295 S.W.3d 731, 741 (Tex. App.—Fort Worth 2009, pet. ref'd).  The statute specifically defines "during the pendency" as meaning the "period of time beginning with the day the indictment, information, or complaint is filed in a court of competent jurisdiction, and ending with the day such accusation is, by an order of a trial court having

---

[2] Aggravated assault with a deadly weapon as charged is usually a second-degree felony, punishable by imprisonment for a term of no less than two years and no more than twenty years.  *See id.* §§ 12.33(a) (West 2019), 22.02(a)(2), (b).  However, because Appellant pleaded "true" to the State's enhancement allegations regarding his prior felony convictions, the trial court could assess a punishment of either life imprisonment, or imprisonment for a term of no less than 25 years and no more than 99 years.  *See id.* § 12.42(d) (West 2019).

jurisdiction thereof, determined to be invalid for any reason." TEX. CODE CRIM. PROC. ANN. art. 12.05(c). If one charging instrument has been superseded by another, the latter, if filed after the limitations period, must plead tolling facts, so that the indictment will indicate on its face that a prosecution thereunder is not barred by the applicable statute of limitations. *Tita*, 267 S.W.3d at 37–38.

However, defects in a tolling paragraph are reparable and do not destroy a trial court's power or jurisdiction to proceed. *Ex parte Smith*, 178 S.W.3d 797, 803 (Tex. Crim. App. 2005). A "reparable" defect is one that "could have been repaired had the defect been brought to the trial court's attention before trial." *Id.*

In *Tita*, the defect in the indictment—the State's failure to include a tolling paragraph—was brought to the trial court's attention before trial via a motion to dismiss. 267 S.W.3d at 35. The Texas Court of Criminal Appeals held that the trial court erred in denying the defendant's motion, and it remanded to the court of appeals to conduct a harm analysis. *Id.* at 39. But the Court also noted, "had the trial court granted appellant's motion to dismiss, then, presumably, the State could have amended the indictment and the prosecution could have proceeded." *Id.* at 38, n.6 (citing TEX. CODE CRIM. PROC. art 28.09 (West 2006)); *see also Ex parte Edwards*, 663 S.W.3d 614, 617 (Tex. Crim. App. 2022) (discussing holding in *Tita*).

On remand in *Tita*, the court of appeals applied the nonconstitutional harm standard, under which only errors affecting a substantial right are harmful. *Tita v. State*, No. 14-06-00736-CR, 2009 WL 1311813, at *2 (Tex. App.—Houston [14th Dist.] May 7, 2009, pet. ref'd) (op. on remand, not designated for publication) (citing TEX. R. APP. P. 44.2(b)). Error affects a substantial right only when it has a substantial and injurious effect or influence in determining the jury's verdict. *Rivera–Reyes v. State*, 252 S.W.3d 781, 787 (Tex. App.—Houston [14th Dist.] 2008, no pet.). When trying to determine whether a trial court's error affected a substantial right in the absence of a tolling paragraph in the indictment, we must examine the possible outcomes if the indictment had not omitted a tolling paragraph. *Tita*, 2009 WL 1311813, at *2. This examination generally considers two questions: (1) whether the indictment, as written, informed the defendant of the charge against him sufficiently to allow him to prepare an adequate defense at trial, and (2) whether prosecution under the deficiently drafted indictment would subject the defendant to the risk of being prosecuted later for the same crime. *Id.* (quoting *Gollihar v. State*, 46 S.W.3d 243, 248 (Tex. Crim. App. 2001)).

**Discussion**

Appellant contends that after the mistrial, the State voluntarily dismissed the indictment in cause number 20CR-144, thus triggering the limitations period. We disagree with Appellant's assessment of the facts. The indictment remained pending after the mistrial. It was not until after the indictment in cause number 22CR-098 that the trial court denied Appellant's motion to dismiss while simultaneously dismissing cause number 20CR-144. The prior indictment in cause number 20CR-144 tolled the statute of limitations for the subsequent indictment in 22CR-098, because both indictments allege the same conduct, same act, or same transaction. *See Hernandez*, 127 S.W.3d at 774. That is, the more recent indictment contained only minor changes to the manner and means of how Appellant committed the same offense. Both indictments are clear on their face that they allege the same conduct, act, or transaction, namely the aggravated assault by threat and use or exhibition of a firearm against the victim that occurred on or about July 10, 2020.

However, Appellant is correct that the indictment in cause number 22CR-098 did not contain the required tolling paragraph, and we must determine whether, as in *Tita*, he was harmed thereby. We conclude that he was not harmed.

Here, as in on remand in *Tita*, the limitations issue was never before the jury. *Tita*, 2009 WL 1311813, at *2. The trial court conducted a hearing on Appellant's motion to dismiss on August 1, 2022, reviewed the tolling documents, and denied the motion. Trial began several months later in November 2022. The absence of a tolling paragraph did not deprive Appellant of notice of the conduct or offense for which he was being prosecuted, nor did it impair his ability to prepare an adequate defense at trial. *See id.*

Moreover, the inclusion or exclusion of a tolling paragraph could have no possible impact on future double jeopardy considerations. *See id.* Had Appellant's motion to dismiss been granted, it is difficult to see how Appellant would have benefitted. Because the indictment in the earlier case was still pending after the mistrial, and that indictment tolled the limitations period for the subsequent indictment, the State would still have time to amend the indictment prior to trial to include a tolling paragraph. *See* TEX. CODE CRIM. PROC. ANN. art. 28.10(a) (West 2006); *see also Hernandez*, 127 S.W.3d at 774; *Tita*, 2009 WL 1311813, at *2.

Appellant has not suggested how he was harmed, and after examining the record as a whole, we are reasonably assured the error did not influence the jury verdict or had but slight

effect. *See* **Tita**, 2009 WL 1311813, at *3 (citing **Rivera–Reyes**, 252 S.W.3d at 787). Accordingly, the error presented here is harmless and must be disregarded.

Appellant's first issue is overruled.

## SUFFICIENCY OF THE EVIDENCE

In his second issue, Appellant contends that the jury's verdict is unsupported by sufficient evidence.

**Standard of Review**

The **Jackson v. Virginia**[3] legal sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the state is required to prove beyond a reasonable doubt. *See* **Brooks v. State**, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *See* **Jackson**, 443 U.S. at 315–16, 99 S. Ct. at 2786–87; *see also* **Escobedo v. State**, 6 S.W.3d 1, 6 (Tex. App.—San Antonio 1999, pet. ref'd). The standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See* **Jackson**, 443 U.S. at 320, 99 S. Ct. at 2789; *see also* **Johnson v. State**, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). The evidence is examined in the light most favorable to the verdict. *See* **Jackson**, 443 U.S. at 320, 99 S. Ct. at 2789; **Johnson**, 871 S.W.2d at 186. A jury is free to believe all or any part of a witness's testimony or disbelieve all or any part of that testimony. *See* **Lee v. State**, 176 S.W.3d 452, 458 (Tex. App.—Houston [1st Dist.] 2004), *aff'd*, 206 S.W.3d 620 (Tex. Crim. App. 2006). A successful legal sufficiency challenge will result in rendition of an acquittal by the reviewing court. *See* **Tibbs v. Florida**, 457 U.S. 31, 41–42, 102 S. Ct. 2211, 2217–18, 72 L. Ed. 2d 652 (1982).

Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt. **Rodriguez v. State**, 521 S.W.3d 822, 827 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (citing **Sorrells v. State**, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011)). Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating

---

[3] 443 U.S. 307, 315–16, 99 S. Ct. 2781, 2786–87, 61 L. Ed. 2d 560 (1979).

circumstances is sufficient to support the conviction. *See Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Juries are permitted to draw multiple reasonable inferences as long as each inference is supported by the evidence presented at trial. *Id.* at 15. Juries are not permitted to reach conclusions based on mere speculation or factually unsupported inferences or presumptions. *Id.* An inference is a conclusion reached by considering other facts and deducing a logical consequence from them, while speculation is mere theorizing or guessing about the possible meaning of facts and evidence presented. *Id.* at 16.

The sufficiency of the evidence is measured against the offense as defined by a hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge would include one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant is tried." *Id.*

## Applicable Law

In a case alleging aggravated assault, the state must prove beyond a reasonable doubt that the accused committed assault and either caused serious bodily injury to another person or used or exhibited a deadly weapon during the commission of the assault. TEX. PENAL CODE ANN. § 22.02 (West Supp. 2022). As relevant to the indictment in this case, one way a person can commit assault is by intentionally or knowingly threatening another with imminent bodily injury. *Id.* § 22.01(a)(2) (West Supp. 2022).

A person acts intentionally with respect to the nature of his conduct when it is his conscious objective or desire to engage in the conduct. *Id.*§ 6.03(a) (West 2021). With respect to the nature of his conduct, a person acts knowingly when he is aware of the nature of his conduct or that the circumstances exist, and with respect to a result of his conduct, a person acts knowingly when he is aware that his conduct is reasonably certain to cause the result. *See id.* § 6.03(b).

Intent may be inferred from circumstantial evidence, including acts, words, and conduct. *See Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004). It is well settled that a threat may be communicated by action, conduct, or words. *See McGowan v. State*, 664 S.W.2d 355, 357 (Tex. Crim. App. 1984). The Texas Penal Code defines "bodily injury" to mean "physical pain, illness, or any impairment of physical condition." TEX. PENAL CODE ANN. § 1.07(a)(8)

(West 2021). A firearm is considered a deadly weapon. *Id.* § 1.07(a)(17)(A). The act of pointing a loaded gun at someone, by itself, is threatening conduct that supports a conviction for aggravated assault. *See Jones v. State*, 500 S.W.3d 106, 113 (Tex. App.—Houston [1st Dist.] 2016, no pet.); *Fagan v. State*, 362 S.W.3d 796, 799 (Tex. App.—Texarkana 2012, pet. ref'd).

The state is required to prove that the accused was the person who committed the crime. *Wilson v. State*, 9 S.W.3d 852, 855 (Tex. App.—Austin 2000, no pet.). No formalized procedure is required for the state to prove the identity of the accused. *Id*. Evidence as to the identity of the perpetrator of an offense can be proved by direct or circumstantial evidence. *Earls v. State*, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986); *Dudley v. State*, 205 S.W.3d 82, 88 (Tex. App.—Tyler 2006, no pet.).

**Discussion**

First, Appellant argues that the *Brooks* analysis is incorrect and urges this Court to continue analyzing factual sufficiency under the *Clewis* standard. *See generally Green v. State*, 350 S.W.3d 617, 623-40 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (plurality op.) (Frost and Seymore, J.J., concurring). This Court has followed *Brooks*. *See, e.g.*, *Henderson v. State*, No. 12-11-00231-CR, 2011 WL 5387575, at *1 (Tex. App.—Tyler Nov. 9, 2011, no pet.) (mem. op., not designated for publication) (rejecting argument that we continue analyzing factual sufficiency under the *Clewis* standard in light of *Brooks*). Accordingly, we will not independently consider Appellant's challenge to the factual sufficiency of the evidence.

Appellant's main argument appears to be that the evidence supporting the conviction depends primarily on the testimony from the victim, who Appellant describes as a person having a "personal hostility" towards him, and his ex-girlfriend, who was present during the assault, and was incited from the "vile aspects of the now failed love affair."

With respect to the former, we note that the victim's testimony alone can constitute sufficient evidence to support a finding that a defendant committed aggravated assault with a deadly weapon. *See Padilla v. State*, 254 S.W.3d 585, 590 (Tex. App.—Eastland 2008, pet. ref'd) (victim's testimony alone, if believed, is sufficient to support conviction for aggravated assault with a deadly weapon).

With respect to the latter, Appellant contends that, as the driver, his ex-girlfriend's testimony must be corroborated by the accomplice witness rule. That rule provides that "[a] conviction cannot be had upon the testimony of an accomplice unless corroborated by other

evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2023). "An accomplice is someone who participates with the defendant before, during, or after the commission of a crime and acts with the required culpable mental state." *Brown v. State*, 270 S.W.3d 564, 567 (Tex. Crim. App. 2008). When evaluating the sufficiency of corroborating evidence under Article 38.14, we "eliminate the accomplice testimony from consideration and then examine the remaining portions of the record to see if there is any evidence that tends to connect the accused with the commission of the crime." *Solomon v. State*, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001). The tends-to-connect standard does not present a high threshold because the "evidence need not prove the defendant's guilt beyond a reasonable doubt by itself." *Id.*; *see Cantelon v. State*, 85 S.W.3d 457, 461 (Tex. App.—Austin 2002, no pet.). Rather, the evidence simply must link the accused in some way to the commission of the crime. *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008). Such evidence "is sufficient corroboration if it shows that rational jurors could have found that it sufficiently tended to connect the accused to the offense." *Smith v. State*, 332 S.W.3d 425, 442 (Tex. Crim. App. 2011). As we discuss below, ample testimonial and physical evidence corroborates not only Appellant's ex-girlfriend's testimony, but also the victim's testimony, which as we have stated, is in itself sufficient to support the jury's verdict. *See Padilla*, 254 S.W.3d at 590.

Furthermore, Appellant implicitly argues that the testimony of the witnesses conflicted. However, in our sufficiency review, we may not reevaluate the weight and credibility of the evidence. *See Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). We must defer to the jury's resolution of conflicting evidence in the State's favor. *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013); *see also In re D.A.K.*, 536 S.W.3d 845, 848 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (holding that despite conflicting testimony, evidence was sufficient to support aggravated assault conviction based on victim's testimony that juvenile defendant threatened to beat and kill her while within arm's reach).

Appellant also appears to contend that there was no evidence that the gunshots impacted the victim's vehicle. Even if true, as indicted here, the shotgun pellets need not have stricken the victim's vehicle to constitute an aggravated assault with a deadly weapon, because the underlying assault was based on the threat accompanied by Appellant's use or exhibition of a deadly weapon during the assault. *See Jones*, 500 S.W.3d at 113 ("The act of pointing a loaded

8

gun at someone, by itself, is threatening conduct that supports a conviction for aggravated assault.").

The evidence at trial showed that during the evening of July 10, 2020, Appellant was driving with his then-girlfriend in her gray Dodge Caravan. After some conflict with individuals in other vehicles, Appellant obtained a twelve-gauge and twenty-gauge shotgun along with shotgun shells to match each firearm. Later, when a different vehicle driven by the victim nearly struck the van from behind, Appellant flashed one of the guns towards the victim.

The victim began to follow the van, so Appellant pulled into a business and let his then-girlfriend drive the van. Shortly thereafter, although there is conflicting evidence, either Appellant shot the gun up in the air or shot at the victim's vehicle.

The victim called 911, and then told the dispatcher that someone in a gray Dodge Caravan pointed a gun and shot at him. The victim testified at trial that Appellant was the man who pointed the shotgun at him and shot at him. He also testified that Appellant told him that he would "blow [his] freaking brains out" when the victim pulled up next to the Caravan and rolled his window down. The victim said that the actual shooting began when the van was near a dialysis center. He also said that he chased the van and Appellant shot towards his vehicle two or three more times.

Appellant's ex-girlfriend testified that she was a passenger in her gray Dodge Caravan with Appellant. She stated that Appellant obtained two guns and shotgun shells. She testified that as Appellant drove the van, someone almost hit them from behind and Appellant pointed the gun where the victim could see the barrel. Afterwards, the victim continued to follow them, so they switched places and she drove. According to her, Appellant shot the gun up in the air. Later, Appellant exited the van, and he shot at least two times at the victim's car. In all, according to Appellant's ex-girlfriend, he fired three to five shots. Appellant took one of the shotguns with him when he exited the vehicle on a subsequent occasion, he fled the scene on foot, and police were unable to apprehend him until a few weeks later.

After the police stopped the van and detained Appellant's ex-girlfriend, Crockett Police Department Lieutenant Lonnie Lum found spent and unspent twenty-gauge shotgun shell casings in the van. A subsequent search of the area described by the victim near the dialysis center on the side of the road revealed a spent twenty-gauge shotgun casing matching those discovered in the van. The van also contained a twelve-gauge shotgun and unspent twelve-gauge ammunition.

And Lum also found a cell phone in the van. Appellant's ex-girlfriend stated that the phone left in the van belonged to Appellant. Investigator Michael Combest from the Houston County Sheriff's Department later downloaded the phone and confirmed that the phone belonged to Appellant.

Both the victim and Appellant's ex-girlfriend testified that Appellant displayed a firearm and shot in the direction of the victim. Both stated that the first shot was near the dialysis center. A spent shotgun shell casing was found in that area. Both testified that Appellant shot more than one time and other spent shell casings were found in the van along with Appellant's phone. The spent shell casings were for a twenty-gauge shotgun which is a firearm and, therefore, a deadly weapon. *See* TEX. PENAL CODE ANN. § 1.07(a)(17)(A).

Based on such evidence and reasonable inferences therefrom, a rational jury could have found beyond a reasonable doubt that Appellant intentionally or knowingly threatened the victim with imminent bodily injury while using or exhibiting a firearm during the commission of the offense. *See id.* §§ 22.01(a)(2), 22.02(a)(2); *Jones*, 500 S.W.3d at 113 (holding that testimony from victim that defendant pointed gun at him, verbally threatened him, and fired the weapon was sufficient to support aggravated assault with deadly weapon charge, despite conflicting evidence from defense witnesses that defendant did not threaten to kill victim, only fired the gun up in the air, and merely intended to remove victim from property); *Fagan*, 362 S.W.3d at 799 (holding evidence that defendant shot gun towards victim's vehicle, coupled with earlier threat, sufficient to support aggravated assault with a deadly weapon).

Appellant's second issue is overruled.

### DISPOSITION

Having overruled Appellant's two issues, the judgement of the trial court is ***affirmed.***

GREG NEELEY
Justice

Opinion delivered August 31, 2023.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

10



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**AUGUST 31, 2023**

**NO. 12-22-00304-CR**

**JASON WAYNE FRIZZELL,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 349th District Court
of Houston County, Texas (Tr.Ct.No. 22CR-098)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, for which execution may issue, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*