

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-23-00130-CR
No. 02-23-00131-CR
No. 02-23-00132-CR
No. 02-23-00133-CR
No. 02-23-00134-CR
No. 02-23-00135-CR
No. 02-23-00136-CR
No. 02-23-00137-CR
No. 02-23-00138-CR
No. 02-23-00139-CR
No. 02-23-00140-CR
No. 02-23-00141-CR

_____

PETER ARNOLD-BROOKS GRAF, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 78th District Court
Wichita County, Texas
Trial Court Nos. 60,152-B-1, 60,152-B-2, 60,152-B-3, 60,152-B-4, 60,152-B-5, 60,152-B-6, 60,152-B-7, 60,152-B-8, 60,152-B-9, 60,152-B-10, 60,152-B-11, 60,152-B-12

---

Before Bassel, Womack, and Walker, JJ.
Memorandum Opinion by Justice Walker

## MEMORANDUM OPINION

Appellant Peter Arnold-Brooks Graf raises seven issues on appeal from his twelve convictions: (1) one count of aggravated sexual assault of a child; (2) two counts of indecency with a child by contact; and (3) nine counts of possession of child pornography with the intent to promote. *See* Tex. Penal Code Ann. §§ 21.11(a), 22.021(a)(1)(B), (2)(B), 43.26(e). The jury assessed the maximum confinement for each offense: life imprisonment for the aggravated sexual assault; twenty years' confinement for each of the indecency counts; and twenty years' confinement for each of the nine child-pornography-possession counts. *See id.* §§ 12.32–.33. The trial court ordered that all twelve sentences be served consecutively. We reverse one of the indecency convictions and render a judgment of acquittal for that count, and we modify the nine child-pornography-possession judgments so that the sentences are to be served consecutively with each other but concurrently with the aggravated-sexual assault count and concurrently with the remaining indecency count. We affirm the remainder of the judgments.

## I. BACKGROUND

In 2016, after one of the complainants (Complainant A)—who was then ten or eleven years old—made an outcry against appellant, police searched his home in Archer County, Texas. As part of the search, officers seized his computer and searched it. Appellant's computer contained thousands of photographic images, including eight of Complainant A and one of Complainant B with their genitals

3

exposed; officers determined that these photographs had been taken in Wichita County. Officers determined that other photographs stored on the computer had been taken in Archer County.

In addition to the search, the investigation included forensic interviews of Complainant A and Complainant A's childhood friend, Complainant C. Both Complainants A and C revealed that when they were prepubescent children, appellant had subjected them to numerous sexual acts. Many of these acts took place at appellant's home in Archer County. But when appellant's home burned down in December 2012, he moved to Wichita County for several months—until sometime in August 2013. Investigators were able to determine that appellant took at least some of the photographs, and committed some of the sexual acts, in Wichita County during that time.

Appellant was charged in Wichita County with aggravated sexual assault and indecency with a child (Complainant A), nine counts of possession of child pornography with the intent to promote it (both Complainants A and B), and another count of indecency with a child (Complainant C). After a jury trial at which appellant and Complainants A and C testified, appellant was convicted of all counts, and the jury assessed the maximum confinement for each offense. *See id.* §§ 12.32(a), 12.33(a).

4

## II.  SUFFICIENCY

In his third issue,[1] appellant challenges the sufficiency of the evidence to support (1) the implied finding that the Count Twelve indecency offense (Complainant C) occurred in Wichita County, Texas, and (2) the finding that he knowingly or intentionally possessed the nine images with the intent to promote.[2]

### A.  INDECENCY COUNT TWELVE—JURISDICTIONAL EVIDENCE SUFFICIENT

Appellant contends that the jury could not have rationally concluded that the Count Twelve indecency offense—touching Complainant C's breasts—occurred in Wichita County because Complainant C testified about multiple occurrences in Archer County but had trouble remembering certain details about the Wichita County house, including how many nights she had stayed there as a child.[3]  Nevertheless, Complainant C testified unequivocally that appellant had touched her breasts in Wichita County:

---

[1]For ease of discussion, we have rearranged the order in which we address appellant's complaints.

[2]Appellant also challenges the sufficiency of the evidence to prove the Count Two indecency offense (Complainant A).  As we explain below, based on our disposition of that offense on double-jeopardy grounds, we need not address this part of appellant's third issue.

[3]Appellant also argues, contrary to the applicable standard of review, that Complainant C's testimony may have been influenced by the forensic interviewer's bias, which he argues may have incurably tainted Complainant C's recollection of events.

A.  . . .  At the Wichita house, he really just touched me on - - he really just touched me on my breasts.  It was - - there was the time where we were watching a movie on the couch, and then I don't really remember the story.  I just remember I was in a bathing suit and he did - - and that's really all I remember.

Q.  So you remember - - was there a thing that happened on the couch at the Wichita house?

A.  Yes.  It wasn't - - he didn't touch me down there.  It's just like - -

Q.  And by "down there" you mean your private vagina area; is that right?

A.  Yes, below my waist.  It was just him with his hand like resting on my chest, like cupped around my breast.

Q.  And was that - - where was that at the rental house?

A.  On their couch in the living room.

Although Complainant C might not have remembered all the details about what happened, she testified unequivocally that appellant touched her breasts at a home located in Wichita County.  The jury was entitled to resolve any conflicts in her testimony, such as her recall of certain details over others, and to conclude that she remembered accurately that appellant had touched her breasts in Wichita County.  *See, e.g.*, *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018).  We overrule this part of his third issue.

## B. Evidence of Intent to Promote Sufficient

Appellant's challenge to the evidence's sufficiency to support the child-pornography conviction is based on unobjected-to evidence[4] and voir-dire questioning that he claims incurably "mischaracterized the requisite *mens rea.*" Appellant contends that the jury was led to believe that the promotion element of the offense could be proven merely by showing that he had "acquired" the photographs.

When performing a sufficiency review, we must consider all of the evidence admitted at trial, even if it was improperly admitted. *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016); *Moff v. State*, 131 S.W.3d 485, 489–90 (Tex. Crim. App. 2004). But we cannot consider a matter that is not evidence. *See, e.g.*, *Cary v. State*, 507 S.W.3d 750, 755 (Tex. Crim. App. 2016) (noting that because argument is not evidence, it is "of no consequence in a sufficiency analysis").

All nine possession counts charged appellant with intentionally or knowingly possessing child pornography with the intent to promote it. In the possession statute, *promote* means "to procure, manufacture, issue, sell, *give*, provide, lend, mail, deliver, transfer, transmit, publish, distribute, circulate, disseminate, present, exhibit, or advertise or to offer or agree to do any of these." Tex. Penal Code Ann.

---

[4]Appellant also relies on matter included in the appendix of his brief that was not admitted into evidence and not seen by the jury. We cannot consider this evidence in our sufficiency review. *Delgado v. State*, 635 S.W.3d 730, 745 (Tex. App.—Dallas 2021, pet. ref'd) (noting that sufficiency review "cannot include evidence not admitted").

§§ 43.25(a)(5) (emphasis added); *see id.* 43.26(b)(i). The charge included this definition of *promote* verbatim.[5]

A jury may infer intent from any facts that tend to prove its existence, including the acts, words, and conduct of the accused, and the method of committing the crime and from the nature of wounds inflicted on the victims. *Manrique v. State*, 994 S.W.2d 640, 649 (Tex. Crim. App. 1999).

The jury heard, without objection, that possessing similar, serial-but-distinct images of the same child stored in different locations on a computer is commonly seen "in the promotion of child pornography" and that photographs of Complainant A stored in this manner were found on appellant's computer.[6] The jury also heard—again, without objection—that an investigating officer used a law-enforcement database of shared child pornography to determine that a series of photographs of Complainant A had been found in the possession of "somebody in another

[5]The charge also correctly instructed the jury on the meanings of intentional and knowing conduct. The charge did not define any of the words comprising the definition of promote. *See Green v. State*, 476 S.W.3d 440, 445 (Tex. Crim. App. 2015) ("As a general matter, definitions for terms that are not statutorily defined are not considered to be the 'applicable law' under Article 36.14, and it is thus generally impermissible for the trial court to define those terms in the jury instructions.").

[6]The jury did not have to believe appellant's testimony that other people had access to this computer and that it was not password protected. The detective who searched appellant's computer testified that there was no evidence that the computer was shared and that appellant appeared to be the exclusive user; however, he did not know whether the device was password protected because he thought that the analytical programs he uses bypasses passwords. Complainant A testified that appellant's computer was password protected.

8

jurisdiction somewhere else, maybe even in another country." The jury did not have to believe appellant's testimony that he never intended to promote the photographs and that the photographs were not intended to be lewd. Nor did it have to believe appellant's testimony that when he heard the detective testify that Dropbox can be used to share photographs, he remembered that his ex-wife—who he claimed used his computer regularly—had a Dropbox account and used it frequently. Finally—and importantly—appellant testified that he intended to keep the photographs to later give to the complainants so that, in his words, "When these girls become mothers, they can go back and say . . . this is me. This is what I was. And they're for the children's eyes only."[7]

Evidence that one of the photographs had been shared at least once, that the photographs were stored on appellant's computer in a way that is commonly used to share such photographs,[8] and that appellant intended to give them to the complainants someday is sufficient evidence of an intent to promote. *See Perkins v.*

_____

[7]Complainant C testified that, in Wichita Falls, appellant had showed her nude photographs of Complainants A and B in the bathtub, posed photographs of Complainants A and B, and other photographs with nude women in them. He rubbed her hips and thigh while doing so. She did not identify any specific photograph, however.

[8]Evidence of appellant's proclivity for viewing and sharing pornography was presented. For example, Complainant A caught him watching pornography when she was six or seven. Additionally, appellant downloaded pornography to Complainant A's iPod and told her to look at it later when she was in bed. He then asked her if she liked the videos.

9

*State*, 394 S.W.3d 203, 210 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd) (holding that evidence of promotion was sufficient when evidence showed appellant made video, which ended up in his friend's possession—even though no evidence showed how friend came into possession of video). Additionally, other evidence showed that appellant attempted to entice Complainant A with pornography and Complainant C with nude photographs of the other complainants.

We overrule appellant's third issue as to all counts but the Count Two indecency offense, which we discuss in Section IV below.

## III. WHETHER PHOTOGRAPHS LEWD—AS APPLIED CHALLENGE

In his seventh issue, appellant argues that the term "lewd" as used in the child-pornography-possession offense is unconstitutionally overbroad as applied to him "in its prohibition of the exhibition of the genitalia of children under the age of 17, sweeping innocent family photographs and artwork into its criminal definition." Appellant did not raise a sufficiency challenge to the "lewd exhibition" element of the statute.

In his motion for new trial, Appellant argued that "the language of" the statutes under which he was convicted—Texas Penal Code Sections 22.021(a)(1)(B), (2)(B), 21.11(a), and 43.26(e)[9]—was applied to his conduct so as to violate his free-speech and artistic-expression rights; this argument was premised on his claim that the

---

[9]Appellant's complaint on appeal is limited to the child-pornography counts.

allegations against him were fabricated as a result of a contentious divorce and that he had "a well-established history of engaging in photography for artistic purposes."

"An 'as applied' challenge to the constitutionality of a statute asserts that [the] statute, although generally constitutional, operates unconstitutionally as to the claimant because of his particular circumstances." *Faust v. State*, 491 S.W.3d 733, 743 (Tex. Crim. App. 2015). In considering an as-applied challenge, we presume that the statute is valid and that the Texas Legislature acted reasonably when enacting it. *Id.* at 743–44. "Because a statute may be valid as applied to one set of facts and invalid as applied to another, it is incumbent upon the challenger to first show that, in its operation, the statute is unconstitutional as to him in his situation; that it may be unconstitutional as to others is not sufficient." *State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 916 (Tex. Crim. App. 2011) (orig. proceeding).

The Texas Court of Criminal Appeals recently examined in the sufficiency context how courts can determine whether photographs depict lewd exhibition of the genitals:

> The Texas Legislature has not statutorily defined "lewd exhibition of the genitals." The meaning of the phrase is a matter of law that we review *de novo*. So, when determining whether any rational trier of fact could have found [an a]ppellant guilty beyond a reasonable doubt, we conduct a *de novo* review to determine whether the [material] constitutes child pornography.

Although we are not bound by them, we can consider the *Dost*[10] factors as guidance to determine whether depictions of naked children are "lewd" for purposes of child pornography. The *Dost* court listed six factors that may be used to evaluate whether a visual depiction constitutes child pornography:

1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;

2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;

3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;

4) whether the child is fully or partially clothed, or nude;

5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;

6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

Whether an image constitutes child pornography under Texas law is determined on a case by case basis, and no single factor is dispositive. This determination is made based on the overall content of the visual depiction, while also considering the minor's age. The focus is on whether the depiction—not the minor—brings forth the genitals or pubic area to excite or stimulate.

A child does not have to be engaging in sexual activity in order for the visual depiction to be considered a "lewd exhibition of genitals."

*Romo v. State*, 663 S.W.3d 716, 719–20 (Tex. Crim. App. 2022) (citations omitted).

---

[10]*United States v. Dost*, 636 F. Supp. 828 (S.D. Cal. 1986), *aff'd sub nom. United States v. Wiegand*, 812 F.2d 1239 (9th Cir. 1987), *and aff'd*, 813 F.2d 1231 (9th Cir. 1987).

Here, Complainant A is nude or wearing a sheer garment in all of the photographs; Complainant B's bottom is exposed in the photograph taken of her. Although the photographs are not focused solely on the prepubescent children's genitalia, it is exposed, and in most of the photographs of Complainant A, she appears to be posed so as to bring attention to that area. Complainant B was photographed from behind while crawling onto furniture, but in a way that focused on her uncovered behind. The photographs of Complainant A do not depict natural poses or attire for a child that age, even for intimate photographs taken by a parent or parent-like figure.[11]

Although there is no suggestion of sexual coyness or willingness to engage in sexual activity—in fact, the photographs appear to highlight *the children's* innocence in exposing their genitals—they do appear voyeuristic.[12] The photographs were taken indoors, with the children alone and Complainant A posed, as if only for the photographer's view. Taken in context and viewed in light of the remaining factors, the photographs do not appear to be the result of either an artistic expression or the natural expression of intimacy between a child and a close, trusted person. Rather,

_____

[11]One of the investigating detectives testified that some people creating their own child-pornography images will "often start photographing the child in normal situations, kind of a grooming process where the child becomes less and less clothed until they're posed in different positions that end up with lewd exhibition of the genitals or their breasts exposed."

[12]In one of the photographs of Complainant A, she appears to be posed more like an adult woman.

they appear to be designed to elicit a sexual response to viewing the exposed genitals of prepubescent girls.

Applying the *Dost* factors, we conclude that sufficient evidence exists that the photographs depict lewd exhibition of the genitals such that the application of Section 43.26(e) to appellant is not so overbroad that it violates his rights to free speech and artistic expression.

We overrule his seventh issue.

## IV. DOUBLE JEOPARDY

In part of his first issue, appellant raises double-jeopardy challenges to his Count Two indecency conviction and the nine child-pornography-possession counts. Specifically, he contends that (1) the Count Two supporting act is subsumed within the Count One aggravated sexual assault and, thus, he has been subjected to multiple punishments for the same offense and (2) that the nine child-pornography-possession convictions possibly subjected him to multiple punishments because "the charging language is duplicative on its face" and the jury could have convicted him multiple times for possessing the same photograph.

Appellant did not raise double-jeopardy complaints in the trial court. Thus, he has forfeited them unless "the undisputed facts show the double jeopardy violation[s are] clearly apparent on the face of the record and . . . enforcement of [the] usual rules of procedural default serves no legitimate state interests." *Gonzalez v. State*, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000); *see also Langs v. State*, 183 S.W.3d 680, 686–87 (Tex.

14

Crim. App. 2006). A double-jeopardy claim is apparent on the face of the trial record if resolving the claim does not require further proceedings to introduce additional evidence supporting the claim. *Ex parte Denton*, 399 S.W.3d 540, 544 (Tex. Crim. App. 2013); *Gonzalez*, 8 S.W.3d at 643. We thus examine the record to determine if it shows a double-jeopardy violation on its face.

## A. INDECENCY COUNT TWO SUBSUMED IN COUNT ONE

Appellant contends that the evidence of the act supporting Count Two (touching Complainant A's genitals) shows that it was subsumed within the aggravated sexual assault charged in Count One (penetrating Complainant A's sexual organ by tongue, mouth, or both). "When both contact and penetration occur in a single sexual act, involving a single orifice, contact is subsumed by penetration."[13] *French v. State*, 563 S.W.3d 228, 235 (Tex. Crim. App. 2018). "But when the offenses are not predicated on the same act, each discrete prohibited act is a separate unit of prosecution." *Id.*

---

[13]A multiple-punishments double-jeopardy violation may arise in two situations: (1) the lesser-included-offense context, when the same conduct is punished twice (once for the basic conduct, and a second time for that same conduct plus more); and (2) when multiple punishments are imposed for the same criminal act under two distinct statutes when the legislature intended that the conduct be punished only once. *Langs*, 183 S.W.3d at 685. The ultimate question is whether the legislature intended to allow for multiple punishments. *Id.* at 688. The Court of Criminal Appeals has determined that in the subsumption context (i.e., contact being subsumed within a penetration), the Legislature intended for only one punishment. *See Aekins v. State*, 447 S.W.3d 270, 272 (Tex. Crim. App. 2014) ("[W]hen a single exposure or contact offense is 'incident to and subsumed by' a penetration offense, the offenses are the 'same' for double-jeopardy purposes.").

15

Because the evidence included sexual acts that occurred in both Archer County and Wichita County, we look for evidence as to whether appellant committed two distinct sexual acts against Complainant A in Wichita County. Complainant A testified that in Wichita County, appellant's tongue "ma[d]e contact with" her vagina. After he "ma[d]e contact," she pushed him away. When asked if he touched her anywhere with his hands, she said, "No, I don't remember." When asked whether—in the house in Wichita County—appellant touched her in other ways that made her feel uncomfortable, she said, "[N]o." The other touching incidents she testified to occurred in Archer County.[14]

Although Complainant A did not remember telling a forensic interviewer that in Wichita County appellant had asked if he could touch her genitals, she said that she remembered a lot more then than what she remembered at trial and that what she had said in her interview was truthful. Nevertheless, there was no evidence that she had said in her forensic interview that appellant had made additional sexual contact with her in Wichita County.

The only evidence of appellant's touching Complainant A's genitals while in Wichita County was when he penetrated her vagina with his tongue; thus, this one act can support only one conviction: that of the aggravated sexual assault. *See Aekins*,

---

[14]For example, although she testified about numerous times that he rubbed her vagina with his fingers while watching pornography with her, he did so while at his home in Archer County.

16

447 S.W.3d at 281, 283. We sustain this part of appellant's first issue; because he would not be entitled to greater relief, we need not address the corresponding complaint in his third issue. *See* Tex. R. App. P. 47.1.

## B. ALL NINE PHOTOGRAPHS ARE DISTINCT AND SUPPORT NINE CONVICTIONS

In his double-jeopardy complaint about the photographs, appellant acknowledges that the State did not have to specify in the indictment which photograph supports which count. *See Vineyard v. State*, 958 S.W.2d 834, 838 (Tex. Crim. App. 1998); *Chairez v. State*, No. 05-22-967-CR, 2023 WL 9693573, at *10 (Tex. App.—Dallas Dec. 6, 2023, pet. ref'd) (mem. op., not designated for publication). But he argues that the photographs are so similar that the offenses could have been factually the same: "All nine counts of the indictment charge lewd exhibition of the genitals so it would be impossible to know which photo to rely on and whether the photo was a duplicate of another charged photo." Thus, appellant claims that the double jeopardy error was present in the indictment, based on the evidence admitted at trial:

> Unless the State is required to specifically allege which images it is relying on for the offense, then the risk of multiple punishments for the same offense is impermissibly present. This is especially true in this case because of summary exhibits like State's Exhibits 25 and 26 which list multiple images which are visibly similar.

Although the State had to prove the same elements for each offense, it relied on different photographs.[15] Under Section 43.26, possession of each item of child pornography is an allowable unit of prosecution and, thus, a separate offense. *Vineyard*, 958 S.W.2d at 838. The trial court admitted an exhibit that showed a copy of each photograph underneath its corresponding indictment count; the only photographs that appear to be the same are those corresponding to Counts Five and Nine. The others are visibly different.

A detective testified at trial that the photographs supporting Counts Five and Nine are actually distinct photographs because although found on the same computer, they have different hash values; the detective explained that when stored on a computer, each distinct photograph has a separate hash value.[16] And appellant testified that he "[n]ormally" kept his camera on a mode "where it fires every second or two" and up to "ten shots a second."

---

[15]Based solely on the descriptive language used in the indictment, Counts Five and Nine alleged different photographs from Counts Six through Eight, Ten, and Eleven.

[16]According to the detective, this could occur if a person copied or manipulated a photograph or took multiple photographs "while the child never moved." Appellant testified that he had altered some of the other photographs found on his computer—for which he was not charged—and he admitted taking the photographs charged in Counts Five and Nine. Appellant also testified that he had not intended to take the two separate photographs in Counts Five and Nine; the complainant had fallen down, and he was more concerned that she had hurt herself than about what he was doing with the camera.

We conclude that no double-jeopardy violation is shown on the face of the record with respect to the nine distinct photographs for which appellant was convicted because his possession of each distinct photograph constitutes a different offense. *See Chairez*, 2023 WL at 9693573, at \*10; *Eubanks v. State*, 326 S.W.3d 231, 246 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd); *see also Witt v. State*, 237 S.W.3d 394, 397 (Tex. App.—Waco 2007, pet. ref'd) (holding same in context of sufficiency analysis).

We overrule this part of appellant's first issue.

## V. CHARGE

In his fifth issue, appellant argues that he was egregiously harmed by unobjected-to errors in the guilt–innocence jury charge. We must review "all alleged jury-charge error . . . regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). In reviewing a jury charge, we first determine whether error occurred; if not, our analysis ends. *Id.*

### A. SECTION 11

Appellant first complains of a paragraph in section 11, which states:

> You are instructed that the State is not required to prove the exact date alleged in the indictment but may prove the offenses, if any, to have been committed at any time prior to the presentment of the indictment.

> You are instructed that the Court has taken judicial notice that the date the indictment in this case was presented was June 7, 2018. There is no period of limitations for the offenses charged in the indictment in Counts 1, 2 and 12. The period of limitation for the offenses charged in

19

Counts 3, 4, 5, 6, 7, 8, 9, 10 and 11 [is] three years from the date of the commission of the offense.

The jury is further instructed that it may, but is not required to, accept as conclusive the fact judicially noticed.

According to appellant, this instruction is ambiguous as to how the jury should calculate the statute of limitations for the child-pornography counts in that it instructs the jury that limitations for those offenses are three years from the date of the offense's commission but simultaneously instructs the jury that the date alleged in the indictment need not be exact.

We hold that there was no error in this part of the jury charge, which adequately instructed the jury that the child-pornography-possession offenses had to be brought within three years from the date they were committed and also before June 7, 2018. That the trial court correctly instructed the jury that the State was not required to prove the exact date alleged in the indictment, *see Klein v. State*, 273 S.W.3d 297, 303 n.5 (Tex. Crim. App. 2008), does not render the limitations-application instructions unclear. *Cf. Mireles v. State*, 901 S.W.2d 458, 461 (Tex. Crim. App. 1995) (holding that even if "on or about" language in indictment is arguably ambiguous in reference to limitations, charge is not necessarily erroneous when viewed in the context of the entire trial).

## B. SECTION 14

In the second part of his fifth issue, appellant contends that section 14 contains a superfluous paragraph: "A person who possesses visual material that contains six or

more identical visual depictions of a child that would constitute an offense under this section is presumed to possess the material with the intent to promote the material." Appellant contends that no evidence showed that he had six or more identical visual depictions of a child on his computer; thus, the presumption was not applicable to the case and therefore should not have been included in the charge.

The presumptive language in the jury charge was taken verbatim from the version of penal code section 43.26 in effect at the time of the offense. *See* Act of May 29, 1989, 71st Leg., R.S., ch. 968, 1989 Tex. Gen. Laws 4046, 4046 (repealed 2023). Assuming that it was error to include a presumption that was statutorily correct but nevertheless inapplicable, we conclude that appellant was not egregiously harmed. *See Taylor v. State*, 332 S.W.3d 483, 490 (Tex. Crim. App. 2011) ("Errors which result in egregious harm are those that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive."); *Almanza v. State*, 686 S.W.2d 157, 171–72 (Tex. Crim. App. 1985) (op. on reh'g) (explaining parameters of egregious-harm review).

First, the presumption was included in the abstract portion of the charge and not repeated in the application. *See Medina v. State*, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999). Second, the instruction does not compel any conclusion by the jury; it merely states when the presumption is applicable and thus is worded in such a way that the jury was free to disregard it upon determining it was not applicable. Third,

although appellant asserts he was harmed because intending to promote child pornography is a second-degree felony while a conviction for mere possession of child pornography is a third-degree felony, as we have concluded, other evidence supported the jury's intent-to-promote finding.

Consequently, we hold that even if the trial court erred by including this presumption in the charge, appellant was not egregiously harmed.

## C. SECTION 16

Appellant's final complaint about the guilt–innocence charge is that the application paragraphs for Counts 6 and 8[17] and the application paragraphs for Counts 5 and 9[18] encouraged multiple convictions for the same offense; thus, they should never have been presented to the jury.

---

[17]Although contained in separate paragraphs, the language of both is substantially the same; the Count 6 paragraph reads as follows:

> Now bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt, that the defendant, . . . on or about the 31st day of August, 2013, in the County of Wichita and State of Texas, did then and there intentionally or knowingly possess with intent to promote visual material that visually depicted, and that the defendant knew visually depicted, Pseudonym-A-16-020511, a child who was younger than 18 years of age at the time the image of the child was made, engaging in sexual conduct, to-wit: actual lewd exhibition of the genitals, in that the color image depicts Pseudonym-A sitting in a green chair with only one leg up and exposing her genitals, then you will find the defendant guilty of the offense of Possession with Intent to Promote Child Pornography, Count 6 as alleged in the indictment.

[18]As with the paragraphs for Counts 6 and 8, the paragraphs for Counts 5 and 9 were substantially the same. The Count 5 paragraph reads as follows:

As previously noted, the photographs relied on by the State for Counts 6 and 8 are visibly different and support separate convictions. During closing, the State expressly pointed the jury to the exhibit displaying the individual photographs with the corresponding indictment count. Because the record does not show either that the jury was misled by the instructions or that there was a danger of a nonunanimous verdict based on those instructions, we hold that even if the wording of the instructions was in error, appellant was not egregiously harmed. *See Taylor*, 332 S.W.3d at 490; *Almanza*, 686 S.W.2d at 171–72.

Having determined that appellant was not egregiously harmed by any error in the jury charge, we overrule his fifth issue.

## VI. UNPRESERVED COMPLAINTS

In the remaining part of his first issue, and in his second and fourth issues, appellant raises complaints that were not preserved at trial.

---

Now bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt, that the defendant, . . . on or about the 31st day of August, 2013, in the County of Wichita and State of Texas, did then and there intentionally or knowingly possess with intent to promote visual material that visually depicted, and that the defendant knew visually depicted, a child, Pseudonym-A-16-020511, a child who was younger than 18 years of age at the time the image of the child was made, engaging in sexual conduct, to-wit: actual lewd exhibition of the genitals, in that the color image depicts Pseudonym-A lying face down on the floor, with her legs spread and exposing her genitals to the camera, then you will find the defendant guilty of the offense of Possession with Intent to Promote Child Pornography, Count 5 as alleged in the indictment.

## A. STATUTE OF LIMITATIONS

According to appellant, the face of the indictment shows that the prosecution for the child-pornography possession was time-barred.[19]  Appellant was charged with all twelve counts in the same indictment, which used an "on or about" date of August 31, 2013, for each child-pornography-possession offense.

Although acknowledging that "[i]t is well settled that the 'on or about' language of an indictment allows the State to prove a date other than the one alleged in the indictment as long as the date is anterior to the presentment of the indictment and within the statutory limitation period," appellant contends that the grand jury could not indict him for the possession offenses if they occurred before June 7, 2015—three years before the indictment's file-stamp date.  *See* Tex. Code Crim. Proc. Ann. § 21.02(6) (providing that an indictment is sufficient if "[t]he time mentioned [is] some date anterior to the presentment of the indictment, and not so remote that the prosecution of the offense is barred by limitation").  But appellant did not challenge the indictment on limitations grounds in the trial court.

As the Court of Criminal Appeals has held,

Under [Article V, Section 12 of the Texas constitution,] an indictment is still an indictment even if it has a defect of substance.  An apparent

_____

[19]At the time the indictment was issued, the applicable statute of limitations for possession of child pornography with the intent to promote was three years.  *See* Act of May 19, 2011, 82nd Leg., R.S., ch. 222, § 1, 2011 Tex. Gen. Laws 797, 798 (currently Tex. Code Crim. Proc. Ann. art. 12.01(b)(3)(K) (imposing seven-year limitation on child-pornography-possession prosecution)).

24

limitation bar is a defect of substance. But an apparently limitation-barred charging instrument "still confers jurisdiction upon the trial court, such that the defendant must bring the defect to the attention of the trial court in order to preserve any error."

*Ex parte Edwards*, 663 S.W.3d 614, 617 (Tex. Crim. App. 2022) (citations omitted); *see* Tex. Code Crim. Proc. Ann. art. 1.14(b) ("If the defendant does not object to a defect . . . of form or substance in an indictment . . . before the date on which the trial on the merits commences, he . . . forfeits the right to object to the defect, . . . and he may not raise the objection on appeal . . . ."). In other words, a limitations complaint "is forfeited if not asserted at or before the guilt/innocence stage of trial." *Proctor v. State*, 967 S.W.2d 840, 844 (Tex. Crim. App. 1998).[20] Accordingly, we conclude that appellant failed to preserve his statute-of-limitations complaint for appeal. *See id.*

Appellant attempts to assert that limitations is an irreparable defect, citing *Tita v. State*, 267 S.W.3d 33 (Tex. Crim. App. 2008), and *Ex parte Tamez*, 38 S.W.3d 159 (Tex. Crim. App. 2001). But in both of those cases, the defendant had challenged limitations in the trial court; thus, their reparable-versus-irreparable-defect holdings do not apply here. *See Tita*, 267 S.W.3d at 35; *Tamez*, 38 S.W.3d at 160. We overrule the part of appellant's first issue challenging the indictment on limitations grounds.

---

[20]In 2011, the Court of Criminal Appeals held that an "absolute statute-of-limitations bar is not forfeited by the failure to raise it in the trial court." *Phillips v. State*, 362 S.W.3d 606, 608 (Tex. Crim. App. 2011). But that court subsequently overruled this holding in 2015. *Ex parte Heilman*, 456 S.W.3d 159, 163–64, 168–69 (Tex. Crim. App. 2015). Thus, no legal basis remains for appellant to argue that he need not have preserved his limitations complaint for appeal.

## B. EXTRANEOUS EVIDENCE

In his second issue, appellant argues that the trial court should have excluded extraneous-offense evidence under Article 38.37, section 3 of the Code of Criminal Procedure because the State did not give him timely notice under that statute and that the extraneous-offense evidence was inadmissible under Rule 403. Appellant did not preserve these complaints at trial.

"To preserve error regarding the State's failure to provide reasonable notice of its intent to use extraneous-offense evidence, a defendant must request a continuance to mitigate the effects of surprise." *Knight v. State*, 457 S.W.3d 192, 203 (Tex. App.—El Paso 2015, pet. ref'd); *Martines v. State*, 371 S.W.3d 232, 249 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *Martin v. State*, 176 S.W.3d 887, 900 (Tex. App.—Fort Worth 2005, no pet.). Appellant did not request a continuance. Nor did he object to the admission of the extraneous-offense evidence on the ground that the State did not give him adequate notice—a fact which he concedes. *See Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009) ("A complaint will not be preserved if the legal basis of the complaint raised on appeal varies from the complaint made at trial."). Thus, he did not preserve a complaint regarding lack of adequate notice.

Although appellant filed a motion in limine regarding the extraneous-offense evidence—which the trial court granted—a motion in limine does not preserve a complaint that evidence was improperly admitted. *Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003). And appellant did not make a Rule 403 objection at trial.

Thus, appellant has also waived this complaint for our review. *See* Tex. R. App. P. 33.1(a)(1); *Montelongo v. State*, 623 S.W.3d 819, 822 (Tex. Crim. App. 2021). We overrule his second issue.

## C. JURY ARGUMENT

In his fourth issue, appellant argues that the prosecutor improperly called him a liar during the guilt-or-innocence phase of trial; improperly implied at punishment that he was a liar by telling the jury, "You can't trust him"; and improperly referred to facts not in evidence at the punishment phase of trial.[21] Appellant concedes that he did not object to these arguments, but he argues that the "prosecutor's repeated improper jury arguments were of such frequency and magnitude that they rendered the jury argument 'fundamentally unfair' in violation of Due Process and Due Course of Law guaranteed by both Texas and U.S. constitutions."

Absent an objection to jury argument, nothing is presented for review. *Hernandez v. State*, 538 S.W.3d 619, 622–23 (Tex. Crim. App. 2018). "Even incurably improper jury argument is forfeitable." *Id.* at 623. Although appellant asks this court to consider the unobjected-to argument as so frequent and egregious as to overcome the systemic preservation requirement, he does not cite authority for this contention, and we decline to do so. *See Dixon v. State*, 595 S.W.3d 216, 223 (Tex. Crim. App.

---

[21]Specifically, she opined that appellant's actions were the reason Complainants A and C were kept apart and that their closeness and vulnerability as children was evidenced by their later joyful reunion.

2020) ("[P]reservation of error is a systemic requirement that a first-tier appellate court is obligated to address before reversing a conviction.").

Because appellant did not preserve his jury-argument complaints, we overrule his fourth issue.

## VII. MODIFICATION OF JUDGMENT

The State concedes the error complained of in appellant's sixth issue: that his sentences for Counts Three through Eleven are improperly cumulated with his sentences for Counts One and Twelve. We agree that the trial court erred by cumulating those sentences. *See Oliva v. State*, 548 S.W.3d 518, 520 (Tex. Crim. App. 2018) (noting that appellate court is not bound by concession).

Generally, when an accused is found guilty of more than one offense arising out of the same criminal episode and prosecuted in a single criminal action, the sentences for each conviction must run concurrently. Tex. Penal Code Ann. § 3.03(a). Section 3.03(b) sets out exceptions to the rule providing what type of sentences may be cumulated to run consecutively, but none of these apply to appellant's child-pornography-possession convictions. *See id.* § 3.03(b). When appellant was alleged to have committed the offenses charged in the indictment, Section 3.03(b) did not allow the trial court to order cumulative sentences from convictions for aggravated sexual assault and child-pornography possession—or from convictions for indecency with a child and child-pornography possession—arising in the same criminal episode. *See* Act of Apr. 7, 2011, 82nd Leg., R.S., ch. 1, art. 6, § 6.01, 2011 Tex. Gen. Laws 1, 14

28

(current version at Tex. Penal Code Ann. § 3.03).  We therefore sustain appellant's sixth issue and will modify the challenged judgments accordingly.

## VIII.  CONCLUSION

Having sustained part of appellant's first issue, we reverse his Count Two conviction in trial court cause number 60,152-B-2 for indecency with a child, and we render a judgment of acquittal on that count only.  Additionally, having sustained his sixth issue, we modify the judgments in cause numbers 60,152-B–3 through 60,152-B-11 (Counts Three through Eleven) to show that the sentences of confinement in each of them run consecutively with each other but concurrently with the sentence in cause number 60,152-B-12 (the Count Twelve indecency) and concurrently with the sentence in cause number 60,152-B-1 (the Count One aggravated sexual assault of a child).  We also modify the sentence in cause number 60,152-B-12 (Count Twelve) to reflect that it is to be served consecutively only with the sentence in cause number 60,152-B–1 (Count One) and concurrently with the sentences in cause numbers 60,152-B-3–11.  We affirm the remainder of the trial court's judgments.

/s/ Brian Walker

Brian Walker
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  June 20, 2024

29